UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                   :

MERLYN EMMONS,                   :

             Plaintiff,          :     **MEMORANDUM AND ORDER**

                                  :

         - against -        :     09-CV-537 (ENV)(JMA)

                                  :

THE CITY UNIVERSITY OF NEW YORK,   :
THE RESEARCH FOUNDATION OF THE   :
CITY UNIVERSITY OF NEW YORK,     :
MEDGAR EVERS COLLEGE[1],       :
EDISON JACKSON, ANDRE LAKE,     :
SANDRA SMITH,  HANNA GUADA,    :
PAUL SHORTER, EVELYN WATSON    :

                                  :

          Defendants.      :
--------------------------------------------------------------- x

**VITALIANO, D.J.**

       Plaintiff Merlyn Emmons brings this action against defendants The City University of

New York ("CUNY"), one of its four-year senior colleges, Medgar Evers College ("MEC"),

Edison Jackson and Hannah Guada, as individual employees of MEC, The Research Foundation

of the City University of New York ("RFCUNY"), and four individual employees of RFCUNY –

Andre Lake, Sandra Smith, Paul Shorter and Evelyn Watson, pursuant to a plethora of federal

and New York state statutes, as well as New York common law.[2] Emmons's claims stem from

alleged mistreatment and, ultimately, termination from her employment by "CUNY and its

---

[1]    The case caption has been amended to reflect the correct spelling of Medgar Evers College.

[2]    There is some confusion regarding Lake's employment. Plaintiff alleges in her complaint that Lake
was the Vice President of MEC, and therefore an employee of CUNY. (Compl. ¶ 19.) However,
Lake is represented by RFCUNY's counsel, and defendants claim that he is "an employee of the
Research Foundation." (Def. CUNY's Br. at 3.) Since both sides' arguments have implicitly grouped
Lake analytically with the discussion of claims against Shorter, Smith, and Watson, the Court treats
Lake as an RFCUNY employee for purposes of the instant motion.

affiliated entities." (Compl. ¶ 6.) Generally, she alleges that defendants unlawfully discriminated against her on the basis of her sex, disability, race, color, religion, and national origin, and retaliated against her for complaining about the discrimination.

Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3] For the reasons set forth below, the motion is granted in part.

## **Background**

The following allegations are drawn from the text of the complaint and are considered true for the purposes of the current motion.

RFCUNY is a private, non-profit corporation that administers grant-funded programs at various educational institutions, including CUNY, a public university established by the City of New York. Emmons started working for RFCUNY in 2001 on a part-time basis at MEC. (Compl. ¶ 12.) In January 2005, she accepted a full-time position as an instructor in MEC's "Immersion" program at an annual salary of $38,000. Since plaintiff had a PhD, "her understanding at the time was that her salary would be increased," but her requests for a pay raise were ignored "on numerous occasions." (Id.) Plaintiff alleges that she had an "at-will contract of employment with CUNY."[4] (Id. ¶ 93.)

In 2005, plaintiff attended MEC's annual retreat for employees and instructors. (Id. ¶ 13.) At one event, Peter Williams, the Vice President of MEC, encouraged the instructors to explain to their students the importance of education and the potential rewards that it could yield. During his address, Williams handed out to the attendees a "scale" that indicated the amount of money that an individual could expect to earn upon attaining successive levels of education.

---

[3] Although defendants CUNY and RFCUNY (with their respective individual employee defendants) each filed separate motions to dismiss, the Court refers to the defendants' arguments collectively.

[4] Defendants agree that plaintiff had an at-will employment status, but assert that her employment was with RFCUNY, not CUNY. (Def. RFCUNY's Br. at 26 n.8.)

But, after reading that a PhD recipient could expect a salary substantially higher than what she was receiving, plaintiff asked Williams how she should explain her lower salary to her students, inquired of him why her male colleagues were earning higher salaries, and indicated that defendants "were discriminating against her because of her sex." (Id.) In response, Williams "admonished" and "berated" her, insinuating that she should be content with the fact that she had a job. (Id. ¶ 14.) Williams also threatened to terminate her, she claims, if she continued to insist on a higher salary. (Id.)

Emmons alleges further that, following their confrontation, Williams began intensely monitoring and scrutinizing her actions, verbally "abus[ing]" and "harass[ing]" her in the presence of her colleagues, and telling some of her former colleagues that he didn't want her to work in his programs. (Id. ¶ 15.) Plaintiff was also removed from a part-time teaching position.

In March 2006, Emmons fell ill and was "placed on disability" for one week by her physician. (Id. ¶ 16.) While recovering at home, plaintiff received a phone call from her director, who informed her that she had been terminated from her full-time position because the position was no longer being funded. Following her termination, she was offered a part-time teaching position from Ella Russell, coordinator of the Adult and Continuing Education program ("ACE") at MEC. (Id. ¶ 17.) When plaintiff expressed interest, Russell promised to contact her with further details. However, Russell later told Emmons that Williams barred her from offering the position because he "did not want that woman to work in any of [his] programs." (Id.)

Plaintiff filed "numerous" complaints with Edwin Jackson, President of MEC, expressing her belief that she was subjected to discriminatory treatment and wrongfully terminated. (Id.¶ 18.) On June 19, 2006, Jackson directed Andre Lake to investigate plaintiff's termination. (Id. ¶

3

19.) Lake informed plaintiff that she was wrongfully terminated by Williams, and he promised to "right the wrong" by reinstating her in a new position with a higher salary. (Id. ¶ 20.)

On August 3, 2006, Lake encouraged plaintiff to apply for a position as an education director at the Young Adult Borough Program ("YABC"). (Id. ¶ 21.) Sandra Smith, director of YABC, offered the position to Emmons with a starting salary of $50,000, and promised to increase the salary up to $52,000 following her initial performance evaluation. (Id.) Plaintiff accepted the position, and, on September 6, 2006, started working at YABC. (Id. ¶ 22.) However, she claims that due to her Trinidadian "ethnicity and/or nationality," Smith "treated [her] differently" and "discriminated against" her by poking fun at her accent, making hurtful comments, and meeting behind closed doors with some of her former colleagues to "disparage" her. (Id.) Smith also frequently berated her, Emmons contends, over trivial issues. (Id. ¶ 23.) For example, when plaintiff requested supplies or to adjust her schedule she was admonished, but such requests were "routinely granted" for other employees. Further, when plaintiff was hired to work at YABC, she informed defendants that she could not work on Friday nights and Saturdays due to her religious practices, but Smith required her to work during those times. (Id. ¶ 26.) When plaintiff reminded Smith of their agreement, she was placed under heightened scrutiny, "disparaged," and "asked … to choose between her job and religion." (Id. ¶¶ 24-26.)

Despite receiving positive evaluations, and in contravention of Smith's prior promise, plaintiff's salary was later reduced. (Id. ¶ 21.) At the same time, plaintiff's male colleague LeHendro Gadson, the employment coordinator at YABC, who allegedly had less experience and credentials than she, earned a higher salary and was twice promoted. (Id. ¶ 25.)

On February 12, 2008, Emmons sustained serious injuries in a car accident and was granted medical leave under the FMLA. (Id. ¶ 27.) While recovering, she received harassing and

4

disparaging phone calls from Smith, who "mocked" plaintiff's injuries and insisted that she "get her ass back to work" or lose her job. (Id. ¶ 28.) Emmons contacted the Client Services office at RFCUNY to complain about "Ms. Smith's incessant threats and harassment." (Id.) On April 10, Emmons informed Smith that she was cleared to work, and planned to return on April 14. (Id. ¶ 29.) However, on April 11, Evelyn Watson, an employee in RFCUNY Human Resources, instructed plaintiff to report to ACE instead of YABC. When plaintiff threatened legal action for discrimination, Watson promised to have Lake's chief of staff, Hannah Guada, contact her and provide her with further details. Emmons was subsequently directed by Guada to contact Smith, who informed her that she had been "loaned" to ACE. (Id.) When plaintiff reported to ACE, the director was surprised to see her and had very short notice concerning the transfer. As a result, Emmons was not provided with office space until "several days later." (Id. ¶ 30.)

On May 15, 2008, Watson told plaintiff to go to the New York City Department of Health and Mental Hygiene and inform them that she required fingerprinting for a new job at the Progressive Youth Empowerment program at Beacon Center (Id. at ¶ 31.) Plaintiff also received a letter from Beacon Center's director, Paul Shorter, dated May 13, 2008, stating that she "will be employed" as education director. In a change, on May 27, Smith informed plaintiff that the position had been eliminated. (Id. ¶ 32.)

On June 4, 2008, plaintiff received a letter from Lake stating that her employment would be terminated as of June 30, 2008 due to lack of funds. (Id. ¶ 33.) Plaintiff filed numerous complaints seeking an answer as to why she was being "singled out," but June 13 and June 16 emails from Guada and Smith, respectively, explained that the decision was not personal and based solely on a "job roles redesign." (Id. ¶¶ 34-35.) On June 30, Lake informed plaintiff that

defendants were investigating her termination and that she would be contacted after the investigation. (Id. ¶ 36.) However, Emmons claims that she was never contacted. (Id.)

On July 22, 2008, Emmons filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"), which subsequently issued a Dismissal and Notice of Rights. Plaintiff filed the instant action on February 10, 2009.

## Discussion

The Court's analysis is complicated by the complaint's overbreadth and lack of clarity. Plaintiff sets forth 20 causes of action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); the Rehabilitation Act, 29 U.S.C. § 701 et seq. ("Rehab Act"); the Equal Pay Act, 29 U.S.C. §201 et seq. ("EPA"); Title VII, 42 U.S.C. § 2000e et seq.; 42 U.S.C. §§ 1981 & 1985; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); New York state Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL"); and New York common law claims of negligent misrepresentation, detrimental reliance, breach of the implied covenant of good faith and fair dealing, injury to reputation, intentional infliction of emotional distress, retaliation and harassment, and tortious interference with contractual relations. With the exception of the tortious interference claim, all of these causes of action are asserted against "all defendants," though seemingly focused on the institutional defendants. As a result, the Court must address each cause of action with respect to not only the institutional defendants CUNY and RFCUNY,[5] but also each of the six individual defendants in both their personal and official capacities. In several instances this "throw everything at the wall and see what sticks" approach

---

[5] Although plaintiff purports to sue MEC, the senior colleges of CUNY are not themselves legally cognizable entities apart from CUNY. See N.Y. Educ. Law §§ 6202, 6205; Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 n.2 (2d Cir. 2004). Accordingly, all claims against MEC are subsumed by the claims against CUNY, and the claims against MEC are dismissed with prejudice.

is most unwarranted. Perhaps acknowledging such deficiencies, Emmons presents many facts in her opposition papers that do not appear anywhere in the complaint. Of course, these extra-pleading allegations cannot be considered by the Court on a 12(b)(6) motion.

In any event, the complaint is deficient in other respects. For example, although the pleading sets forth extensive claims for various forms of damages with respect to each of the claims, it is far less clear what form of equitable relief Emmons seeks, as she requests only "an order of injunction prohibiting defendants from engaging in unlawful employment practices" and "such other relief as the Court may deem just and proper under the circumstances." (Compl. ¶ 128.) Further, she states a general cause of action for "retaliation" (id. ¶ 77-79), but this can only be understood as asserting retaliation claims under every statutory cause of action pled by plaintiff where retaliation is actionable, such as the ADA, Title VII, and the New York human rights laws. Notwithstanding the liberality this Order does accord plaintiff, the Court's willingness to liberally construe the complaint in her favor is far more circumscribed when, as here, plaintiff is represented by counsel.

## I.    **Legal Standards**

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." Id. (quoting Twombly, 550 U.S. at 555); see also In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949
(quoting Twombly, 550 U.S. at 570). This "plausibility standard is not akin to a probability
requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."
Id. (internal quotations omitted); see Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)
(interpreting Twombly to require a "plausibility standard" that "obliges a pleader to amplify a
claim with some factual allegations in those contexts where such amplification is needed to
render the claim plausible") (emphasis omitted), rev'd on other grounds, 129 S. Ct. 1937 (2009).
On a Rule 12(b)(6) motion, the Court must accept as true all factual statements alleged in the
complaint and draw all reasonable inferences in favor of the nonmoving party. Vietnam Ass'n
for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). The court
may only consider the pleading itself, documents that are referenced in the complaint, documents
that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that
the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. See
Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Int'l Audiotext Network, Inc.
v. Am. Tel.& Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

On a rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction,
however, the Court does not draw all reasonable inferences in favor of plaintiffs. See J.S. ex rel.
N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v.
Drakos, 140 F.3d 129, 131 (2d Cir. 1998). Further, "[i]n resolving the question of jurisdiction,
the district court can refer to evidence outside the pleadings and the plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002)); see LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) (noting that "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings").

      B.    The Eleventh Amendment – Generally

Defendants argue that several causes of action against CUNY and Jackson and Guada in their official capacities should be dismissed for lack of subject matter jurisdiction due to sovereign immunity. The Eleventh Amendment bars a private suit against a state unless the state consents to being sued or Congress "unequivocally express[es] its intent" to abrogate the state's sovereign immunity through legislation "enacted 'pursuant to a valid grant of constitutional authority.'" In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (quoting Tennessee v. Lane, 541 US. 509, 517 (2004)). The "Eleventh Amendment extends immunity not only to a state, but also to entities considered arms of the state," such as CUNY. Clissuras, 359 F.3d at 81 (internal quotation marks omitted); see Barry v. City Univ. of N.Y., 09-CV-8805, 2010 U.S. Dist. LEXIS 31181, at *10-*14 (S.D.N.Y. Mar. 30, 2010). The immunity also extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e. in their official capacities). See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-04, 104 S. Ct. 900, 908-10 (1984); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").

One narrow caveat to state sovereign immunity is the doctrine, first enunciated in Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908), that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief" against state officials "to prevent a continuing violation of federal law" because such conduct is not considered to be state action. Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985); see Pennhurst, 465 U.S. at 102, 104 S. Ct. at 909. In her opposition, plaintiff attempts to shunt her claims into the ambit of Young by arguing that she seeks prospective injunctive relief against Jackson and Guada, "including but not limited to reinstatement." (Pl.'s Opp. Br. at 11.) However, as noted above, the complaint itself is far less clear in its request for equitable relief, and "reinstatement" is never mentioned. On the face of the complaint, the Young exception is not supportable, and, therefore, all claims purportedly brought pursuant to that doctrine are dismissed with leave to replead, if plaintiff can do so in harmony with her obligations under Rules 8 and 11.[6]

## II.    ADA & Rehabilitation Act

Plaintiff's third and fifth causes of action assert that defendants' conduct violated the ADA and the Rehab Act, respectively. Emmons claims that she was mistreated, discriminated against, and ultimately terminated "because of her disability." (Compl. ¶¶ 57, 68.)

Titles I and II of the ADA collectively prohibit employers and public entities from discriminating against and excluding from benefits "qualified individual[s]" with disabilities. 42 U.S.C. §§ 12112(a), 12132. Under either title, plaintiff must assert that (1) defendants are

---

[6]    Even assuming *arguendo* that the complaint sought reinstatement, dismissal of the claims seeking such relief against Jackson and Guada would still be required because plaintiff has not sufficiently alleged that either individual currently has the responsibility or capability to enact such relief. See Miles v. Baruch Coll., 07-CV-1214, 2008 U.S. Dist. LEXIS 5534, at *14 (E.D.N.Y. Jan. 25, 2008) (explaining that the Young exception only applies "provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action.") (quoting Davidson v. Scully, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001)). Defendants point out that Jackson is no longer employed by MEC. (See Second Decl. of Roderick Arz, dated Aug. 27, 2009, Ex. A.)

subject to the ADA; (2) that she is "disabled" within the meaning of the statute; and (3) she was subject to some adverse employment action or denied benefits by reason of having such disability. Bolmer v. Oliveira, 594 F.3d 134, 148 (2d Cir. 2010); Giordano v. City of N.Y., 274 F.3d 740, 747 (2d Cir. 2001). Similarly, the Rehab Act prohibits "qualified individual[s] with a disability" from being "denied the benefits of, or . . . subjected to discrimination" under programs that receive federal financial assistance. 29 U.S.C. § 794(a). Plaintiff's ADA and Rehab Act claims are based on the same factual allegations, and in light of the "identical requirements" imposed by the two statutes, the Court can analyze both causes of action "in tandem." Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999); see Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (noting that the prima facie claims "under either the ADA or the Rehabilitation Act . . . are identical for our purposes"); Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) ("[T]he standards adopted by Title II of the ADA . . . are generally the same as those required under section 504 [of the Rehab Act]."); Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146-49 (2d Cir. 2002) (conflating analysis of ADA and Rehab Act claims).

As an initial matter, individual defendants are not subject to personal liability as a matter of law under either statute. See Spiegel v. Schulmann, 06-CV-5914, 2010 U.S. App. LEXIS 9274, at *13-*14 (2d Cir. May 6, 2010); Fox v. State Univ. of N.Y., 497 F. Supp. 2d 446, 449-50 (E.D.N.Y. 2007); Scaggs v. N.Y. State Dep't of Educ., 06-CV-799, 2007 U.S. Dist. LEXIS 35860, at *53 n.12 (E.D.N.Y. May 16, 2007). Therefore, all ADA and Rehab Act claims against Jackson, Lake, Smith, Guada, Shorter, and Watson in their individual capacity are dismissed with prejudice.

The Court also dismisses with prejudice plaintiff's ADA and Rehab Act claims against the individual RFCUNY employees in their official capacities, because they are wholly

employment discrimination when Title I of the ADA expressly deals with that subject." 531 U.S. at

redundant to plaintiff's claims against RFCUNY itself. See Loadholt v. Dep't of Corr. Servs., 09-CV-553, 2009 U.S. Dist. LEXIS 109935, at *10 (W.D.N.Y. Nov. 24, 2009) ("[W]here . . . an official capacity claim against an individual defendant would be redundant, courts in this Circuit have dismissed ADA claims against individual defendants in their official capacities."); B.D.S. v. Southold Union Free Sch. Dist., 08-CV-1319, 2009 U.S. Dist. LEXIS 55981, at *64-*65 (E.D.N.Y. June 24, 2009) (dismissing "official capacity" ADA and Rehabilitation Act claims *sua sponte* with prejudice as redundant of claims against employer school district); Fox, 497 F. Supp. 2d at 451 (dismissing ADA claims against SUNY employees in their official capacities as "redundant" with claims against the university itself, and noting that "this Court and others have held that official capacity claims are not viable under the ADA").

Additionally, the Eleventh Amendment requires dismissal with prejudice of the ADA claims against CUNY and Jackson and Guada in their official capacities.[7] "Title I [of the ADA] does not abrogate the sovereign immunity enjoyed by the State of New York or its agencies and officials." Canales-Jacobs v. N.Y. State Office of Court Admin., 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009) (citing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 961 (2001)). In her opposition brief, Emmons disclaims reliance on Title I, which deals with employment discrimination, and instead claims protection under Title II, which addresses discrimination by public entities. Although district courts in this Circuit have split on the issue, the Court agrees with well-reasoned precedent that Title I is the *exclusive* remedy for employment discrimination claims, even if the employer is a public entity.[8] See Scherman v. N.Y. State Banking Dep't, 09-CV-2476, 2010 U.S. Dist. LEXIS 26288, at *22-*34 (S.D.N.Y.

---

[7]  Defendants do not argue that sovereign immunity protects against Rehabilitation Act claims.

[8]  In Garrett, the Supreme Court declined to decide "whether Title II . . . is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject." 531 U.S. at 360 n.1.

Mar. 19, 2010); Chiesa v. N.Y. State Dep't of Labor, 638 F. Supp. 2d 316, 321 (N.D.N.Y. 2009);

Fleming v. State Univ. of N.Y., 502 F. Supp. 2d 324, 333 (E.D.N.Y. 2007). But see Olson v.

New York, 04-CV-419, 2005 U.S. Dist. LEXIS 44929, at *12-*13 (E.D.N.Y. Mar. 9, 2005).

Sovereign immunity also extends to claims of retaliation brought pursuant to Title V of the

ADA. Moshenko v. State Univ. of N.Y. at Buffalo, 07-CV-116, 2009 U.S. Dist. LEXIS 125069,

at *7-*8 (W.D.N.Y. Sept. 16, 2009); Chiesa, 638 F. Supp. 2d at 323. Plaintiff's purported Title

II claims are dismissed.

The remaining *discrimination* claims against RFCUNY under the ADA and Rehab Act

fail because they do not satisfy Iqbal. Plaintiff does not – and cannot – sufficiently allege that

she has a "disability." Both statutes define a disabled individual as one who "(i) has a physical

or mental impairment which substantially limits one or more of such person's major life

activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an

impairment." Weixel, 287 F.3d at 147 (quoting 29 U.S.C. § 705(20)(B) & 42 U.S.C. §

12102(2)); see Garvin v. Potter, 367 F. Supp. 2d 548, 561 (S.D.N.Y. 2005) (noting that the

definition of a "disabled person" under the Rehabilitation Act is "almost identical to that of a

disabled person under the ADA"). Major life activities include "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing . . . and working," 29 C.F.R. §

1630.2(h)(2)(i), and must be "of central importance to daily life." Toyota Motor Co. v.

Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691 (2002). However, "the inability to perform a

single particular job does not constitute a substantial limitation in the major life activity of

working." Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 05-CV-5106, 2009 U.S. Dist.

LEXIS 40616, at *25 (E.D.N.Y. May 24, 2009) (internal quotation marks and citations omitted).

Here, the only relevant allegations in the complaint are that (1) plaintiff "became sick and was placed on disability by her physician for [a] one week period" in March 2006; and (2) in February 2008, plaintiff was injured in a car accident, was "placed on an indefinite disability or sick leave by her physician," and was cleared to return to work about two months later. (Compl. ¶¶ 16, 27-29.) Plaintiff's complaint fails to allege any substantial physical limitations,[9] but even if it did, the fact that Emmons returned to work so quickly without claim of limitation undermines any such cause of action; "short term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled' within the meaning of the ADA." Verdi v. Potter, 08-CV-2687, 2010 U.S. Dist. LEXIS 11053, at *17-*18 (E.D.N.Y. Feb. 9, 2010) (internal quotation marks omitted); see Toyota, 534 U.S. at 198; see, e.g., Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir. 1999) (finding employee not disabled under ADA where temporary physical injuries prevented him from working for three and a half months). Nor can Emmons find her way under the aegis of the disability statutes by claiming that defendants "regarded" her as disabled, because plaintiff alleges the opposite – namely, that Smith doubted that her injuries were more than "minor" and that plaintiff was home relaxing. (Compl. ¶ 28.) Since plaintiff cannot plausibly amend her complaint to allege that she has a "disability", the discrimination claims against RFCUNY are dismissed with prejudice. See Rogers v. City of N.Y., 2009 U.S. App. LEXIS 28704, at *4 (2d Cir. Dec. 31, 2009) (affirming 12(b)(6) dismissal of ADA claims where complaint failed to assert that shortness of breath when climbing stairs constituted a "substantial limitation of a major life activity"); Verdi, 2010 U.S. Dist. LEXIS 11053, at *25-*26 (dismissing Rehab Act claim and denying leave to amend where impairment lasted only two months and plaintiff "fail[ed] to allege the threshold requirement that Plaintiff

---

[9]    In her opposition brief, plaintiff explains that her physician put her on disability due to "difficulties walking and climbing, back pains, difficulties sitting for an extended period of time, injury to her arms and shoulders, etc." (Pl.'s Opp. Br. at 15 n.14.)

was 'disabled'"); <u>Lee v. Sony BMG Music Entm't, Inc.</u>, 557 F. Supp. 2d 418, 425 (S.D.N.Y. 2008) (dismissing ADA claims where plaintiff did not "even identify what her disability is – she merely states that she (1) suffered unspecified . . . injuries following the altercation . . . and (2) was 'forced to go on leave'").

On the other hand, plaintiff's *retaliation* claims against RFCUNY under the ADA and Rehab Act are sufficiently pled to survive the 12(b)(6) motion. Emmons need not allege a disability to sustain a retaliation claim, but must allege that (1) she engaged in an activity "protected by the ADA"; (2) defendants were aware of this activity; (3) defendants took adverse employment action against her; and (4) a causal connection existed between the alleged adverse action and the protected activity. <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002). Plaintiff stated that she complained to RFCUNY Client Services about Smith's "harassment" during her sick leave in 2008. Although the complaint does not specifically allege that plaintiff complained about being discriminated against on the basis of having a disability – the sort of activity that ADA Title V seeks to protect, <u>see</u> 42 U.S.C. § 12203(a) – such complaints can be reasonably inferred from the pleading. Of course, plaintiff will have to prove at a later stage of the litigation that she was actually engaged in such protected activity.

Therefore, the only ADA and Rehab Act claims that survive the instant motion to dismiss are the retaliation claims asserted against RFCUNY. All of plaintiff's claims against CUNY and the individual defendants in both their personal and official capacities, and plaintiff's discrimination claims against RFCUNY are dismissed with prejudice.

## III.   <u>Title VII</u>

Emmons's second cause of action asserts claims pursuant to Title VII, alleging that defendants refused to promote and pay her equal wages, brought false allegations against her,

and fired her based on unlawful discrimination due to her sex, religion, national origin, race, and color. (Comp. ¶¶ 47-52.) Title VII not only forbids employment discrimination based on these criteria, but also prohibits an employer from retaliating against an employee for opposing the employer's potentially discriminatory practices. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56, 126 S. Ct. 2405, 2408 (2006); Matima v. Celli, 228 F.3d 68, 78 (2d Cir. 2000). On this claim, plaintiff also alleges that she was berated and subjected to harassment by her superiors, and disparaged on account of her religious observances. (Compl. ¶¶ 22, 26.)

First off, though, individuals are not subject to liability pursuant to Title VII. Sassaman v. Gamache, 566 F.3d 307, 315 (2d Cir. 2009); Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). Therefore, all Title VII claims against individual defendants Jackson, Lake, Smith, Guada, Shorter, and Watson in their personal capacities are dismissed with prejudice.

Also dismissed with prejudice are plaintiff's Title VII claims against the individual defendants in their official capacities. Although the Second Circuit has not yet explicitly decided the issue, "many recent decisions in this Circuit have rejected Title VII official capacity claims." Martin v. State Univ. of N.Y., 06-CV-2049, 2010 U.S. Dist. LEXIS 29297, at *73-*74 (E.D.N.Y. Mar. 26, 2010); Harris v. Buffardi, 08-CV-1322, 2009 U.S. Dist. LEXIS 96724, at *8-*9 (N.D.N.Y. Oct. 19, 2009); Carmody v. Vill. of Rockville Ctr., 661 F. Supp. 2d 299, 326 (E.D.N.Y. 2009). Yet, even if official capacity claims are permissible, the Court would still dismiss such claims in this case because they, like the ADA and Rehab Act official capacity claims, see supra Part II, are redundant in light of the Title VII claims brought against CUNY and RFCUNY themselves. See Saunders v. N.Y. City Dep't of Educ., 07-CV-2725, 2010 U.S. Dist. LEXIS 4544, at *21-*22 (E.D.N.Y. Jan. 19, 2010) (dismissing plaintiff's Title VII claims sua sponte against individual defendants because "individuals are not subject to liability under

those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against [the public entity]").

Defendants do not dispute that plaintiff has stated a Title VII claim against RFCUNY. However, they assert that CUNY is not a proper defendant because it was not plaintiff's "employer" within the meaning of the statute, and that, in any event, any allegations regarding discrete acts by defendants prior to September 26, 2007 are time-barred.

On the first point, defendants contend that "the Complaint is notably devoid of any allegation that CUNY was Plaintiff's employer under any relevant statutory definition." (Def. CUNY's Br. at 14.) Nonetheless, while the alleged conduct relevant to the Title VII claims directly involves individuals employed by RFCUNY, the complaint alleges that "[a]t all times relevant and material to this case, CUNY, RFCUNY, and MEC were characterized as a single integrated employer," so the employer status has been sufficiently pled as to all institutional defendants. (Compl. ¶ 9.)

Defendants also argue that "CUNY was not Plaintiff's employer as a matter of law" under Title VII and other statutes. (Def. CUNY's Reply Br. at 9.) But, this contention, at its heart, requests that the Court conduct a fact-intensive inquiry into the nature of the relationship between CUNY and RFCUNY, including applying "common law principles of agency," and examining whether "financial benefit is obtained by the purported employee from the employer." By defendants' admission, that inquiry requires consideration of a variety of "factors," including "salary or other wages, employee benefits, such as health insurance, vacation, sick pay, or the promise of any of the foregoing."[10] (Id.; quoting York v. Ass'n of the Bar of the City of N.Y.,

---

[10] Plaintiff argues that, aside from common law agency, the Court may apply the "single or joint employer" test, a "four factored analysis" that has been "adopted by the Second Circuit in the Title VII context." Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 378 (2d Cir. 2006). This factor analysis too would require the Court to investigate the niceties of the CUNY/RFCUNY relationship.

286 F.3d 122, 123-26 (2d Cir. 2002)). CUNY and RFCUNY are not such disparate entities that this Court can determine, without the benefit of a factual record, that CUNY *per se* cannot qualify as Emmons's "employer." On the contrary, there is precedent indicating that, at least in some circumstances, the two are sufficiently related for CUNY to be held liable. See, e.g., Fox v. City Univ. of N.Y., 94-CV-4398, 1996 U.S. Dist. LEXIS 9594, at *20-*22 (S.D.N.Y. July 10, 1996) (noting that "[t]he whole purpose of [RFCUNY] was to streamline the process of procuring and implementing grants for the colleges of [CUNY]" and that "[RFCUNY] acted as a single integrated unit with the University and the individual colleges"); cf. Zhao v. State Univ. of N.Y., 472 F. Supp. 2d 289, 313-15 (E.D.N.Y. 2007) (refusing to dismiss Title VII claims against SUNY's "Research Foundation" because of the "intertwined relationship" between the foundation and the university); Campbell v. City Univ. Constr. Fund, 98-CV-5463, 1999 U.S. Dist. LEXIS 9575, at *8-*9 (S.D.N.Y. June 25, 1999) ("There appears to be enough intermingling of the staff and functions of CUNY . . . and the Research Foundation for plaintiff's ADEA and ADA claims to proceed against CUNY."). Where such factual issues persist, dismissal at the Rule 12 stage is wholly inappropriate.

Putting aside CUNY's corporate muddle, plaintiff's Title VII claims against CUNY and RFCUNY are still subject to a time bar. "Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency . . . within 300 days of the alleged discriminatory conduct." Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006); 42 U.S.C. § 2000e-5(e)(1). Emmons filed her administrative charge with the EEOC on July 22, 2008, meaning that any Title VII claims concerning acts that occurred prior to September 26, 2007 are time-barred. Defendants note that several of plaintiff's allegations, including her claims that

male colleagues were earning higher salaries in 2005 and that she was terminated from the Immersion Program in March 2006 due to discrimination, occurred prior to the limitations date.

Plaintiff argues, on the other hand, that defendants' discriminatory acts prior to the bar date are saved by the "continuing violation" doctrine, which provides that "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004) (quoting Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993)). "If a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks and citations omitted). Plaintiff seeks to mold her claim accordingly by alleging a "policy, pattern and practice of intentional and willful exclusion of protected employees from promotions" in violation of Title VII. (Compl. ¶ 49.)

Mere allegation of such a continuing practice does not guarantee a clear path. Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period," even when they are "related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, 113, 122 S. Ct. 2061, 2068, 2072 (2002); see Patterson, 375 F.3d at 220. The continuing violation doctrine only "allow[s] the inclusion of action whose discriminatory character was not apparent at the time they occurred" and "is not intended to allow employees a second chance to bring stale claims once the statute of limitations has passed." Warren v. N. Shore Univ. Hosp. at Forest Hills, 03-CV-0019, 2006 U.S. Dist. LEXIS 73302, at *14 (E.D.N.Y. Sep. 29, 2006). "Discrete" acts that are easy to identify, such as

"termination, failure to promote, [and] denial of transfer," will not be saved even where a plaintiff alleges a continuing policy of discrimination or retaliation. Morgan, 536 U.S. at 114.

The discriminatory actions alleged by Emmons to have occurred prior to September 26, 2007 were discrete and therefore time-barred. For example, plaintiff claims that she was harassed in retaliation for her complaints regarding sex discrepancies in pay, and that she was relieved of a part time teaching position and fired while she was out on disability. These actions do not directly bear on plaintiff's allegation of a policy denying promotions based on unlawful discrimination. Since "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination," Patterson, 375 F.3d at 220 (internal quotation marks omitted), any Title VII claims of discrimination and retaliation directed at defendants' alleged actions prior to September 26, 2007 are dismissed with prejudice, for they cannot be saved by the bald assertion that they are connected somehow to what transpired later.

Yet, to the extent that the complaint alleges a Title VII claim that defendants' actions constituted a *hostile work environment*, such a claim would permit consideration of conduct prior to September 26, 2007. See Morgan, 536 U.S. at 122 ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). The complaint asserts such a hostile work environment claim but does so only under NYSHRL and NYCHRL. More importantly, the Court does not foreclose the possibility that plaintiff intended to incorporate hostile work environment claims in her Title VII cause of action, and she is permitted to amend her pleading on that basis, if she believes such claim is warranted.

In summary, plaintiff's Title VII claims against all of the individual defendants, in both their personal and official capacities, are dismissed with prejudice. Plaintiff's claims against

CUNY and RFCUNY survive, but allegations of discrimination and retaliation based on conduct that occurred prior to September 26, 2007 are time-barred. Plaintiff may amend her pleading to incorporate a Title VII claim of a hostile work environment.

## IV.     Equal Pay Act

Emmons's sixth cause of action asserts a claim pursuant to the EPA. Although plaintiff repeats stock language asserting that her rights were violated by defendants' "refusing to promote the plaintiff," "terminat[ing] her employment," and other unlawful conduct, the EPA, true to its name, only "prohibits the payment of unequal wages to employees on the basis of sex." Jamilik v. Yale Univ., 2009 U.S. App. LEXIS 22144, at *2 (2d Cir. Oct. 8, 2009); 29 U.S.C. § 206(d). To state a claim for EPA relief, plaintiff must assert that: (1) her employer pays different wages to employees of the opposite sex; (2) employees paid disparate salaries perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. Klein v. N.Y. Univ., 07-CV-160, 2008 U.S. Dist. LEXIS 62540, at *8-*9 (S.D.N.Y. Aug. 14, 2008); Bronzini v. Classic Sec. LLC, 08-CV-475, 2009 U.S. Dist. LEXIS 2865, at *19 (S.D.N.Y. Jan. 15, 2009) (citing Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)). The only relevant allegations in the complaint are that: (1) at the 2005 employee retreat, Emmons *believed* that her male colleagues were earning higher salaries, and complained about sex discrimination; and (2) when Emmons was working at YABC, the employment coordinator, LeHendro Gadson, was "elevated above the plaintiff," "promoted on at least two separate occasions," and "apparently earned more money than [Emmons] even though Mr. Gadson hardly worked." (Compl. ¶¶ 13, 25.)

Without more, these allegations are insufficient to satisfy Iqbal. Plaintiff's belief that her male colleagues were receiving more compensation than women in 2005 is not supported by any

allegation other than her own speculation at that time. Plaintiff provides more detail with respect to her 2006 claim by discussing an employee who allegedly received more compensation, but she still fails to allege in the complaint that Gadson's employment coordinator position was one of comparable skill, effort, and/or responsibility relative to plaintiff's position. See Rose v. Goldman, Sachs & Co., Inc., 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (noting that plaintiff "must show that the two positions are 'substantially equal' in skill, effort and responsibility") (quoting Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001)); see also Virgona v. Tufenkian Imp.-Exp. Ventures, Inc., 05-CV-10856, 2008 U.S. Dist. LEXIS 72139, at *7 (S.D.N.Y. Sept. 23, 2008) (noting that "where jobs are merely comparable, an action under the Equal Pay Act will not lie") (quoting Lambert, 10 F.3d at 56).

Accordingly, plaintiff's EPA claims against all defendants are dismissed, but without prejudice and with leave to replead if plaintiff can do so in compliance with Rules 8 and 11.[11]

## V.     42 U.S.C. §§ 1981 & 1985

Plaintiff's first and fifteenth causes of action assert claims against all defendants pursuant to 42 U.S.C. §§ 1981 and 1985, respectively, alleging that they, "in furtherance of their policy and practice and in their respective individual capacit[ies]," discriminated against her right to make and enforce contracts, and conspired to deprive her of her rights by placing her under surveillance and obtaining her fingerprints under false pretenses.[12] (Compl. ¶¶ 44, 98-99.)

---

[11]   Since the Court dismisses the EPA claims on these grounds, it does not address defendants' other 12(b)(6) arguments that plaintiff has not sufficiently alleged personal involvement of Jackson and Guada or CUNY's status as plaintiff's "employer," as defined by the EPA. Plaintiff might choose to consider this objection should she attempt to re-plead this claim.

[12]   In her opposition, plaintiff defends the merits of a § 1983 cause of action, ignoring the motion to dismiss the § 1985 claims, and premising one defense of her § 1981 claims on the ability to "maintain a § 1983 individual-capacity suit." (Pl.'s Opp. Br. at 23.) Whatever the reason, plaintiff failed to plead a § 1983 claim, and she cannot use her legal briefs to add an entirely new, wholly unreferenced

To start with, the §§ 1981 and 1985 causes of action against CUNY and Jackson and Guada in their official capacities are barred by sovereign immunity and dismissed. See Ding v. Bendo, 03-CV-1237, 2006 U.S. Dist. LEXIS 24339, at *10-*11 (E.D.N.Y. Mar. 23, 2006); Moshenko, 2009 U.S. Dist. LEXIS 125069, at *9. Although it is not settled law whether § 1985 abrogates New York's immunity, "it is well-settled that a State and its instrumentalities are not 'persons' subject to suit under § 1983 . . . and there is no reason to suspect the Congress intended the term 'persons' to take on a different meaning in § 1985." Ding, 2006 U.S. Dist. LEXIS 24339, at *11 n.2 (internal citations omitted); see also Harrison v. Potter, 323 F. Supp. 2d 593, 604 (S.D.N.Y. 2004) (no waiver of sovereign immunity for claims under §§ 1983 and 1985). Either way, the Court holds that it lacks subject matter jurisdiction over the §§ 1981 and 1985 claims advanced against CUNY and Jackson and Guada in their official capacities.

A.   Section 1981

More specifically, § 1981 protects against *racial* discrimination. To state a claim, plaintiff must allege: (1) she is a member of a racial minority; (2) an intent by defendants to discriminate on the basis of race; and (3) the discrimination concerned rights such as plaintiff's ability to make and enforce contracts, sue, be party to suit, give evidence, or fully and equally enjoy the benefit of all laws and proceedings for the security of persons and property. See 42 U.S.C. § 1981; McNeill v. New York, 242 Fed. Appx. 777, 778 (2d Cir. 2007); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981's conception of "race" also protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987); see United States v.

---

cause of action to her complaint. Plaintiff is permitted, however, to amend her pleading to include properly tailored § 1983 claims, provided that she can do so in compliance with Rules 8 and 11.

Nelson, 277 F.3d 164, 178 (2d Cir. 2002). However, Emmons errs to the extent that she attempts to premise her § 1981 claims "on the basis of disability, sex, religion, [and] national origin," (Compl. ¶¶ 43-45), and any such claims are dismissed with prejudice. See Walker v. N.Y. City Dep't of Corr., 01-CV-1116, 2008 U.S. Dist. LEXIS 97109, at *32 (S.D.N.Y. Nov. 18, 2008); Chin v. N.Y. City Hous. Auth., 575 F. Supp. 2d 554, 561 n.3 (S.D.N.Y. 2008); Ritterband v. Hempstead Union Free Sch. Dist., 06-CV-6628, 2008 U.S. Dist. LEXIS 65423, at *20 (E.D.N.Y. Aug. 20, 2008).

Plaintiff's claims of § 1981 discrimination (but not retaliation) based on her race, ethnicity, and/or ancestry are dismissed without prejudice.[13] In her opposition, Emmons acknowledges that the complaint contained an error insofar as she conflated her Trinidadian national origin with her West Indian ethnicity, the latter of which is not referenced in the complaint. (Pl.'s Opp. Br. at 10 n.10.) Plaintiff may correct this error and premise a § 1981 claim on her West Indian ancestry and ethnicity in an amended complaint, but this is not the only 12(b)(6) obstacle that she must overcome to state plausible claims against several of the individual defendants. More pointedly, she only alleges one instance where she was subjected to discrimination on the basis of her ethnicity: in September 2006, Smith and other unnamed colleagues at YABC "treated [her] differently," made fun of her, mocked her accent, and increased surveillance of her activities. (Compl. ¶ 22-24.) Even assuming *arguendo* that these activities implicated a right protected by § 1981, the complaint does not allege any defendant's personal involvement in discrimination, aside from Smith, sufficient to establish individual liability under § 1981. See Patterson, 375 F.3d at 229 ("In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally

---

[13] The RFCUNY employees, however, have not sought to dismiss plaintiff's retaliation action pursuant to § 1981, so these claims survive the motion to dismiss.

connect the actor with the discriminatory action . . . . Personal liability under § 1981 must be predicated on the actor's personal involvement.") (internal quotation marks omitted). Although personal involvement by a supervisor "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring," id., plaintiff's allegations regarding involvement in racial or ethnic discrimination by Jackson, Guada, Lake, Shorter, and Watson are conclusory. Jackson's and Guada's alleged "power to hire and fire" (Pl's Opp. at 23), for example, is insufficient to claim their involvement.

B.    Section 1985

Section 1985(3) creates a cause of action where "two or more persons in any State or Territory conspire...for the purpose of depriving...any person...of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3). To allege a violation, plaintiff must claim: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a United States citizen. United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356 (1983). Moreover, a § 1985(3) violation "must be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)). In other words, "the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." Id. at 850.

In this light, plaintiff's § 1985 claim is inadequately pled. First, for the same reasons stated above with respect to the § 1981 claim, Emmons has failed to sufficiently plead racial or other class-based discrimination. Rather, she claims a conspiracy to place her under increased surveillance and acquire her fingerprints. As a result, it is unclear how plaintiff alleges that she was deprived of "equal protection of the laws, or of equal privileges and immunities under the laws." See Friends of Falun Gong v. Pac. Cultural Enter., 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) ("[T]o maintain a claim pursuant to § 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates."). Second, to properly allege a § 1985 conspiracy, plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). "[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). Here, plaintiff's allegations regarding a concerted effort are speculative; she is unable to demonstrate anything beyond the fact that more than one individual defendant may have been "involved in the events of which [plaintiff] complains," which alone "does not establish a conspiracy."[14] Parker v. City of N.Y., 05-CV-1803, 2008 U.S. Dist. LEXIS 791, at *25 (S.D.N.Y. Jan. 7, 2008); see Morpurgo v. Inc. Vill. of

---

[14] Plaintiff relies on two allegations to demonstrate that there was a "clear" conspiracy. First, that Watson, an RFCUNY employee, promised to have Guada contact her with further details regarding involuntary transfer out of YABC in April 2008. (Compl. ¶ 29.) Yet, while this may establish some contact between CUNY and RFCUNY staff members, it does not demonstrate a meeting of minds to achieve an unlawful end. Second, Guada emailed plaintiff in June 2008 and indicated that her position was eliminated due to "job roles redesign." (Id. ¶ 35.) In her opposition brief, plaintiff supplements this allegation with an unpled allegation that the email stated that "we could not reappoint you," which plaintiff takes to imply that Guada worked in connection with RFCUNY employees to terminate plaintiff. Even if this fact were pled, however, it falls well short of sufficiently pleading conspiracy.

Sag Harbor, 07-CV-1149, 2010 U.S. Dist. LEXIS 21109, at *76 (E.D.N.Y. Feb. 17, 2010) (dismissing § 1985 claim because "[a]lthough Plaintiff makes some allegations of relationships between the alleged co-conspirators, she has done so by way of freewheeling and speculative allegations which fail to raise a reasonable inference of a conspiracy."); Harris v. Queens County Dist. Atty's. Office, 08-CV-1703, 2009 U.S. Dist. LEXIS 105912, at *23 (E.D.N.Y. Sept. 15, 2009). The claims, consequently, fail, and are dismissed without prejudice.

## VI. Family Medical and Leave Act

Emmons's fourth claim is brought under the FMLA, which grants to eligible employees the right to take up to 12 work weeks per year of unpaid leave due to a serious health condition that prevents them from performing their work functions. 29 U.S.C. § 2612(a)(1). The statute provides that the employee has the right to return to a prior position or an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). "The FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 174 (2d Cir. 2006) (quoting Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724-25, 123 S. Ct. 1972, 1976 (2003)).

Plaintiff may advance a FMLA action on two different theories: "interference" and "retaliation." Potenza v. City of N.Y., 365 F.3d 165, 167 (2d Cir. 2004). A prima facie case of interference is established when a plaintiff demonstrates that: (1) she is an "eligible employee" under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA. Roberts v. Ground

Handling, Inc., 499 F. Supp. 2d 340, 351 (S.D.N.Y. 2007). A prima facie case of retaliation is established when a plaintiff demonstrates: (1) she exercised rights protected under the FMLA; 2) she was qualified for his position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Potenza, 365 F.3d at 168.

The operative allegations in the complaint relate to plaintiff's February 2008 injury. Emmons alleges that following her car accident, she requested, and was granted by defendants, FMLA leave. During this period of leave, she alleges that Smith threatened and harassed her, insisting that she return to work. Further, when she was ready to return to work approximately two months later, she was told to report to a different location, and learned that her prior position had been eliminated. Plaintiff also states that when she transferred to the new location, her new supervisors were "surprised" by her arrival and did not provide her with office space for several days. Within two months of the transfer, she was fired. (Compl. ¶ 27-33.)

Once again, sovereign immunity mandates dismissal with prejudice of the FMLA claims against CUNY and Jackson and Guada in their official capacities. The Second Circuit has held that "Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provisions at issue here, . . . medical leave to deal with one's own 'serious health condition,' 29 U.S.C. § 2612 (a)(1)(D), and the related retaliation section, see id. § 2614(a)(1), at least when used in conjunction with Section 2612(a)(1)(D)." Hale v. Mann, 219 F.3d 61, 69 (2d Cir. 2000). Emmons's allegation that she had "serious injuries" leaves no doubt that she took medical leave to deal with her own health, and thus she cannot pierce sovereign immunity.[15]

---

[15]  The distinction between taking FMLA leave for dealing with one's own health, as opposed to taking care of a family member, 29 U.S.C. § 2614(a)(1)(C), is important in light of the Supreme Court's

Plaintiff also fails to state an "interference" claim against the remaining parties because she has not sufficiently alleged that she was denied any benefits to which she was entitled under the FMLA. Plaintiff's admission that her request for leave was granted and that she returned to work upon its conclusion forecloses her from arguing that she was denied benefits while on leave. The mere fact that plaintiff has alleged that she was "harassed" by Smith during her leave does not establish that any of her actual benefits were denied or subject to interference. Nor is plaintiff's transfer to another position upon her return sufficient to demonstrate a denial, because she has failed to allege that the new position was not "equivalent" to her prior position "in terms of pay, benefits and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a); see Vlahos v. Schroeffel, 02-CV-139, 2006 U.S. Dist. LEXIS 95814, at *13-*15 (E.D.N.Y. Mar. 6, 2006). The only information plaintiff provides regarding her new position at ACE is that it was "situated at a different location," her supervisors "were only given a short notice concerning her transfer," and she was not provided with "office space until several days" following the transfer. (Compl. ¶¶ 29-30.) None of these allegations constitute a denial of benefits. See Alessi v. Monroe County, 07-CV-6163, 2010 U.S. Dist. LEXIS 2746, at *26 (W.D.N.Y. Jan. 13, 2010). The "interference" claims are therefore dismissed with prejudice.

Not all FMLA claims are foreclosed, however. Emmons's allegation that she was fired approximately two months following her FMLA leave does state a claim for FMLA retaliation. Drawing all inferences in plaintiff's favor, the complaint sufficiently alleges that her employers were frustrated and upset with her taking of FMLA leave, and, as a result, took steps to "punish" her or force her out of her employment, including the hasty transfer to the other location,

---

holding in Hibbs, which recognized Congress's abrogation of state sovereign immunity on the family-care leave provision. 538 U.S. at 727-728. The Supreme Court has not made an explicit holding with respect to FMLA leave to take care of one's self, so the Second Circuit's opinion in Hale remains controlling on this Court.

refusing to offer the Beacon Center position, and ultimately firing her. Without question, therefore, plaintiff adequately states a FMLA retaliation claim against RFCUNY.

Not necessarily so, though, with respect to the liability of the individual defendants. These defendants argue that plaintiff's claims fall short of Iqbal compliance. The FMLA permits actions against an "employer," which includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," 29 U.S.C. § 2611(4)(A)(ii), and has been interpreted to "extend[] to all those who controlled in whole or in part [a plaintiff's] ability to take a leave of absence and return to her position." Wilson v. Am. Broad. Co., 08-CV-1333, 2009 U.S. Dist. LEXIS 60163, at *14 (S.D.N.Y. Mar. 31, 2009) (quoting Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 629 (S.D.N.Y. 1996)); see Astudillo v. U.S. News & World Report, 02-CV-7902, 2005 U.S. Dist. LEXIS 92, at *5 (S.D.N.Y. Jan. 6, 2005) (denying motion to dismiss FMLA claim where allegations "indicate[d] some control [by defendant] over [plaintiff]'s employment"). Still, in this case, reasonable inferences can be drawn from the complaint that Jackson, Guada, Lake, Smith, and Watson could have had some degree of control over the hiring, firing, or granting of FMLA leave to plaintiff, and thus they could be deemed "employers" under the statute. And, at this stage, the Court so finds. However, under no circumstances can the pleading be understood to allege that Shorter, the Beacon Center director, had any power to control Emmons's employment at YABC or any other position she held. As to him, the claim does not lie and is dismissed.

## VII.   State Law Claims

Plaintiff asserts against all defendants causes of action pursuant to the NYSHRL and NYCHRL, and common law claims for negligent misrepresentation, detrimental reliance, "retaliation and harassment," breach of the implied covenant of good faith and fair dealing,

"injury to reputation," and intentional infliction of emotional distress. She also advances a cause of action for tortious interference with contractual relations against individual defendant Lake.

A. Sovereign Immunity

"It is well-established that '[t]he Eleventh Amendment bars federal suits against state officials on the basis of state law.'" Carvel v. Cuomo, 2009 U.S. App. LEXIS 27922, at *2 (2d Cir. Dec. 21, 2009) (quoting Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir. 1996)); see Pennhurst, 465 U.S. at 106. Since state law causes of action, whether common law or statutory, cannot constitute an abrogation of state sovereign immunity by Congress, a federal court can only obtain subject matter jurisdiction over a state on such claims where the state has waived its immunity. Clissuras, 359 F.3d at 81 n.3. Neither a federal court's pendent jurisdiction "nor any other basis of jurisdiction may override the Eleventh Amendment," and the state's immunity against state law claims extends to state officials. Pennhurst, 465 U.S. at 121; see Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 540-41, 122 S. Ct. 999, 1004 (2002). Accordingly, given the absence of waiver, "[c]laims under state law against CUNY are barred by the Eleventh Amendment" and are dismissed with prejudice. Burrell v. City Univ. of N.Y., 995 F. Supp. 398, 410 (S.D.N.Y. 1998).[16] Similarly, all state law claims brought against Jackson and Guada in their official capacities are dismissed with prejudice for lack of subject matter jurisdiction.[17]

---

[16] Plaintiff does not – and cannot – point to any instances in which New York waived its immunity and consented to be sued under state law in federal court. It is clear that New York has maintained its sovereign immunity with respect to the NYSHRL and NYCHRL. Moore v. N.Y. State Div. of Parole, 06-CV-1973, 2008 U.S. Dist. LEXIS 72260, at *21 (E.D.N.Y. Sept. 23, 2008); Koumantaros v. City Univ. of N.Y., 03-CV-10170, 2007 U.S. Dist. LEXIS 19530, at *14-*15 (S.D.N.Y. Mar. 19, 2007).

[17] Even if the Court construed the complaint to assert claims for prospective injunctive relief, see supra Part I.B, the Ex parte Young doctrine would not apply to permit such relief against Jackson and Guada in their official capacities on the state law claims. See Monserrate v. N.Y. State Senate, 10-CV-1106, 2010 U.S. Dist. LEXIS 14937, at *34 (S.D.N.Y. Feb. 19, 2010), aff'd, 2010 U.S. App. LEXIS 5449 (2d Cir. Mar. 16, 2010) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law") (quoting Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth., 134 F.3d 87, 93 (2d Cir. 1998)).

B.    New York State and New York City Human Rights Laws

Plaintiff's eighth, ninth, and tenth causes of action seek relief on claims brought pursuant to New York state Executive Law § 296 ("NYSHRL"), alleging a hostile work environment and unlawful termination on account of her "disability, sex, religion, national origin, race and color," and unlawful retaliation. (Compl. ¶¶ 80-85.) Her eleventh, twelfth, and thirteenth causes of action re-assert the same claims, but this time pursuant to the Administrative Code of the City of New York, § 8-107.1(a) ("NYCHRL"). (Id. ¶¶ 86-91.) Defendants do not seek to dismiss any of these claims as brought against RFCUNY or the individual RFCUNY defendants. However, they argue that plaintiff has failed to allege conduct by Jackson or Guada that would support a plausible personal capacity claim against them.

Two separate provisions of NYSHRL § 296 create potential liability. Section 296(1)(a) provides that it "shall be an unlawful discriminatory practice [f]or an employer . . . , because of the age, race, . . . color, national origin, . . . sex, [or] disability . . . of any individual, . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Individual liability under § 296(1) lies where a defendant "actually participates in the conduct giving rise to discrimination", Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (quoting Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)), but is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." Banks v. Corr. Servs. Corp., 475 F. Supp. 2d 189, 199 (E.D.N.Y. 2007) (internal quotation marks omitted); see McCoy v. City of N.Y., 131 F. Supp. 2d 363, 376 (E.D.N.Y. 2001). Section 296(6) provides for "aiding and abetting" liability for § 296(1)(a) violations, explaining that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the

32

doing of any of the acts forbidden under this article or to attempt to do so." N.Y. Exec. Law §

296(6). To be found liable under this provision, an individual need not have supervisory or

hiring and firing power, see Banks, 475 F. Supp. 2d at 200, but still must have *actually*

*participated* in the conduct giving rise to the claim of discrimination" and engaged in "direct,

purposeful, participation." Robles v. Goddard Riverside Cmty. Ctr., 08-CV-4856, 2009 U.S.

Dist. LEXIS 51500, at *8 (S.D.N.Y. June 17, 2009) (quoting Brice v. Sec. Operations Sys., Inc.,

00-CV-2438, 2001 U.S. Dist. LEXIS 1856, at *10-*11 (S.D.N.Y. Feb. 26, 2001)).

Since § 296 "uses virtually identical language" to § 8-107 of the NYCHRL, claims under

both statutes are "subject to the same analysis."[18] Dunson v. Tri-Maintenance & Contractors.,

Inc., 171 F. Supp. 2d 103, 113-14 (E.D.N.Y. 2001); see Schanfield, 663 F. Supp. 2d at 344.

Once again the Court's analysis is complicated by the plaintiff's failure to clearly allege

her causes of action, and in not specifying which provision of § 296 and § 8-107 applies to each

of the individual defendants. Assuming, however, that Emmons incorporates both theories of

liability against both Jackson and Guada, the NYSHRL and NYCHRL claims against them under

both § 296(1)/§ 8-107(1)(a) and § 296(6)/§ 8-107(6) survive the 12(b)(6) motion – albeit by the

slimmest of margins – because plaintiff has sufficiently alleged their personal involvement.

With respect to Jackson, plaintiff's unpled allegation surfacing in her opposition brief that

Jackson "refused to take any actions to reinstate plaintiff since June 2008" is insufficient to

establish that he was discriminating against her on the basis of race, sex, or any other trait. (Pl.'s

Opp. Br. at 25.) However, since Jackson was the President of MEC, a reasonable inference can

be drawn from the complaint that he had the power to hire and fire Emmons. Further, Emmons

---

[18] The complaint purports to state causes of action pursuant to "§8-107.1(a)" of the NYCHRL, which deals exclusively with "victims of domestic violence, sex offenses or stalking." The Court assumes that plaintiff intended to refer to § 8-107, including subsections (1)(a) (employment discrimination) and (6) (aiding and abetting).

alleged in the complaint that she filed "numerous" complaints with Jackson about discrimination, which could give rise to a potential claim for retaliation. The same is true of Guada. Emmons has significant work yet to do to demonstrate – as she alleges in her brief – that "Guada worked in cahoots with the other named individuals to terminate plaintiff's employment." However, Emmons does allege that Guada played a not insignificant role in the decision to terminate her position and responded to her complaints via email. These allegations yield an inference that Guada had power over personnel, and that she was discriminating or retaliating against Emmons.

Accordingly, plaintiff's causes of action pursuant to § 296(6) of the NYSHRL and § 8-107(6) of the NYCHRL against all defendants save for CUNY, and Jackson and Guada in their official capacities, survive the motion to dismiss.

C.    Negligent Misrepresentation and Detrimental Reliance

Plaintiff's sixteenth and seventeenth causes of action seek to advance common law claims for negligent misrepresentation and detrimental reliance. Although the complaint purports to state both claims against "all defendants," plaintiff only alleges relevant facts with respect to Shorter and Watson, namely that they had no intention to employ her but still represented to her that she would receive the education director position. (Compl. ¶¶ 101-110.)

In any event, the detrimental reliance claims are dismissed with prejudice against all parties because "[d]etrimental reliance is an element of equitable and promissory estoppel; there is no independent cause of action for detrimental reliance." Paxi, LLC v. Shiseido Ams. Corp., 636 F. Supp. 2d 275, 286-87 (S.D.N.Y. 2009) (quoting Brinsights, LLC v. Charming Shoppes of Del., Inc., 06-CV-1745, 2008 U.S. Dist. LEXIS 3787, at *12 (S.D.N.Y. Jan. 16, 2008)). Even if the Court permitted plaintiff to recast this claim as one for promissory estoppel, the claim would nonetheless fail because "New York law . . . does not recognize promissory estoppel in the

employment context." Henry v. Dow Jones, 08-CV-5316, 2009 U.S. Dist. LEXIS 6508, at *18

n.8 (S.D.N.Y. Jan 28, 2009) (quoting Deutsch v. Kroll Assocs., 02-CV- 2892, 2003 U.S. Dist.

LEXIS 16613, at *8(S.D.N.Y. Sept. 23, 2003); Baguer v. Spanish Broad. Sys., 04-CV-8393,

2007 U.S. Dist. LEXIS 70793, at *15 (S.D.N.Y. Sept. 25, 2007) (explaining that "several courts

within the Second Circuit" have held same); Shapira v. Charles Schwab & Co., 225 F. Supp. 2d

414, 419 (S.D.N.Y. 2002) ("[A] prospective employee, in other words, cannot sue an employer

who reneges on a job offer or other employment promise on such a theory.").

     Plaintiff's remaining claims for negligent misrepresentation also must be dismissed with

prejudice. "Under New York law, a plaintiff may recover for negligent misrepresentation only

where the defendant owes her a fiduciary duty." Muller-Paisner v. TIAA, 289 Fed. Appx. 461,

465 (2d Cir. 2008) (quoting Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992)). "A

fiduciary relationship exists under New York law when one person is under a duty to act for or to

give advice for the benefit of another upon matters within the scope of the relation." Id. (quoting

Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991)). As one might expect,

plaintiff has not alleged that Shorter, Watson, or any other defendant owed her any fiduciary

duty, and "courts have routinely held that the employer-employee relationship does not

constitute a special relationship sufficient to support a claim for negligent misrepresentation."

Kwon v. Yun, 606 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2009) (citing and describing cases); see

Cannon v. Douglas Elliman, LLC, 06-CV-7092, 2007 U.S. Dist. LEXIS 91139, at *33-*35

(S.D.N.Y. Dec. 10, 2007). Even if plaintiff could establish the special relationship necessary to

support a negligent misrepresentation claim, she has not sufficiently alleged that she "reasonably

relied on [the misrepresentations] . . . to her detriment." Hydro Investors, Inc. v. Trafalgar

Power Inc., 227 F.3d 8, 20 (2d Cir. 2000). Plaintiff merely states, in conclusory fashion, that she

"reasonably relied upon defendants' representations" and "has been damaged." Accordingly, the negligent misrepresentation claims are dismissed with prejudice.

D.   Breach of Implied Covenant of Good Faith

Emmons's eighteenth cause of action vaguely alleges that defendants' collective actions "were malicious, illegal, unlawful, fraudulent, and directed at depriving the plaintiff of her rights, and were in violation of public policy," and as a result she is "traumatized." (Compl. ¶¶ 112-13.) In New York, however, the implied covenant of good faith and fair dealing may only arise from a valid and binding contract, and plaintiff has failed to allege that *any* contract between herself and defendants existed. See Beekman Inv. Partners, L.P. v. Alene Candles, Inc., 05-CV-8746, 2006 U.S. Dist. LEXIS 5341, at *19 (S.D.N.Y. Feb. 14, 2006) (explaining that a "cause of action for breach of an implied duty of good faith and fair dealing . . . [is] properly dismissed for lack of a valid and binding contract from which such a duty would arise"). Nor can plaintiff turn to her at-will employment or public policy generally to find an implied covenant of good faith on which to base her lawsuit. See Horn v. N.Y. Times, 100 N.Y.2d 85, 96, 760 N.Y.2d 378, 384, 790 N.E.2d 753, 759 (2003) (explaining that New York has "consistently declined to create a common-law tort . . . or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts" and that "a claim based on the implied covenant of good faith and fair dealing may not be used as a substitute for a nonviable claim of breach of contract") (internal quotation marks omitted). Accordingly, plaintiff's implied covenant cause of action is dismissed with prejudice.

E.   Injury to Reputation

Emmons's nineteenth cause of action asserts that she relied on defendants' assertions that she would be employed as Education Director, but having not received that position, she has

"remained unemployed and has been ridiculed by colleagues, friends and acquaintances as a result." (Compl. ¶ 114-17.) She claims that these actions caused injury to her reputation and attacked her "proprietary right to her good name." (Id. ¶ 118-20.)

This cause of action dangerously approaches frivolousness. To start with, there is no general "injury to reputation" cause of action under New York law; as both parties agree, plaintiff really intends to state a claim for "defamation." See Four Directions Air, Inc. v. United States, 06-CV-283, 2007 U.S. Dist. LEXIS 72882, at *14-*15 (N.D.N.Y. Sept. 30, 2007). "Under New York law, a claim for defamation must allege (1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation *per se* or caused special damages." Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (internal quotation marks omitted).

Even if the Court assumes that the letter from Shorter included a false statement regarding plaintiff's employment, Emmons has not alleged that the letter was published to any third party. More critically, the falsity in the letter would relate solely to the alleged false promise of employment, which could not possibly constitute defamation. A defamatory statement is "one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quoting Kimmerle v. N.Y. Evening Journal, 262 N.Y. 99, 102, 186 N.E. 217, 218 (1933)). Statements that are "defamatory per se" include those that "tend to injure another in his or her trade, business or profession." Liberman v. Gelstein, 80 N.Y.2d 429, 434-35, 590

37

N.Y.S.2d 857, 860, 605 N.E.2d 344, 347 (1992). Nothing about the alleged letter could possibly expose plaintiff to such public hatred or contempt, or damage her "business" reputation. Emmons's embarrassment in not receiving a job that she expected to receive does not give her license to contort the boundaries of defamation law as this claim seeks to do. Her cause of action based on injury to reputation and/or defamation is dismissed with prejudice.

F.    Intentional Infliction of Emotional Distress

Emmons's twentieth cause of action, alleging intentional infliction of emotional distress in light of defendants' alleged "extreme and outrageous actions," must also be dismissed with prejudice for failure to state a claim. In order to state such a claim in New York, plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). The New York Court of Appeals has explained that the standard for stating a valid claim is "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. N.Y. Post Co. Inc., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993) (internal citations omitted). "Accordingly, absent a 'deliberate and malicious campaign or harassment or intimidation,' an [intentional infliction of emotional distress] claim is susceptible to determination as a matter of law." Nelson v. Ulster County, 06-CV-1057, 2010 U.S. Dist. LEXIS 29215, at *26 (N.D.N.Y. Mar. 26, 2010) (quoting Nader v. Gen. Motors Corp., 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970)).

Aside from plaintiff's failure to specify which defendants engaged in such conduct, the alleged conduct (regardless of whose responsibility) does not rise to the level of outrageousness required to maintain the intentional infliction claim. As a general proposition, adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims. See Virola v. Xo Commc'ns, Inc., 05-CV-5056, 2008 U.S. Dist. LEXIS 30413, at *69 (E.D.N.Y. Apr. 15, 2008) ("New York courts do not, as a rule, extend the tort of intentional infliction of emotional distress to employment discrimination claims."); Fahmy v. Duane Reade, Inc., 04-CV-1798, 2005 U.S. Dist. LEXIS 20929, at *22-*23 (S.D.N.Y. Sept. 26, 2005) (describing several cases that stand for this proposition). General rule or not, and (however regrettable) discriminatory conduct or not, the misconduct alleged simply does not constitute a "deliberate and malicious" campaign that can trigger liability on this theory. The intentional infliction cause of action is therefore dismissed with prejudice.

G.     Retaliation and Harrassment

Emmons's seventh cause of action is stated as a claim for "retaliation and harassment." (Compl. ¶¶ 77-79.) As discussed above, the Court construes the complaint to incorporate "retaliation" claims into all of the state and federal statutory causes of action that would permit such claims. But, New York does not recognize an independent cause of action for "harassment," and that portion of plaintiff's seventh cause of action is dismissed with prejudice. See Jacobs v. 200 E. 36th Owners Corp., 281 A.D.2d 281, 281, 722 N.Y.S.2d 137, 137 (1st Dep't 2001); Goldstein v. Tabb, 177 A.D.2d 470, 471, 575 N.Y.S.2d 902, 904 (2nd Dep't 1991).

H.     Tortious Interference With Contractual Relations

Emmons's fourteenth cause of action advances yet another theory: tortious interference with contractual relations. It is brought against defendant Lake only, alleging that Emmons had

a "reasonable expectation" of the contract's "continued existence," and that Lake "arbitrarily" and unlawfully terminated her employment. (Compl. ¶¶ 92-96.)

To establish a claim of tortious interference with contractual relations under New York law, plaintiff must show: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (quoting Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996)). Defendants argue that since plaintiff has an "at will" employment contract, the claim is better cast as one for tortious interference with prospective contractual relations. Regardless of the nomenclature, nonetheless, New York law does recognize that "the at will relationship entails certain limited rights, . . . including the right to maintain an action for tortious interference in certain limited situations." Finley, 79 F.3d at 1294-95 (internal citations omitted). This class of tort does not require showing interference with an existing contract, but rather that a defendant "acted for a wrongful purpose or used dishonest, unfair, or improper means" to interfere with a business relationship of some kind. Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008), cert. denied, Catskill Dev., L.L.C. v. Harrah's Operating Co., 129 S. Ct. 1908 (2009); see Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214 (2d Cir. 2002).

Plaintiff's claim ultimately fails because she cannot establish that Lake was a "third party" who "used wrongful means to effect the termination" of her employment with CUNY and/or RFCUNY. Albert, 239 F.3d at 274 (quoting Cohen v. Davis, 926 F. Supp. 399, 403 (S.D.N.Y. 1996)). A plaintiff may only maintain "an action for tortious interference against a co-employee by showing that the co-employee 'acted outside the scope of [his or her] authority'" by inducing the employer to terminate. Id. at 275 (quoting Kosson v. Algaze, 203 A.D.2d 112,

113, 610 N.Y.S.2d 227, 228-29 (1st Dep't 1994)). "A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self interest." Cohen, 926 F. Supp. at 404.

In this case, plaintiff's allegations reflect her grievance that Lake played a significant role in her termination, having written the June 4, 2008 letter indicating that her position was eliminated due to lack of funds. (Compl. ¶¶ 33, 93.) Emmons alleges that Lake acted outside the limits of his authority due to his "bad faith, self-interest, malice, and personal animosity" toward her. Yet this rote listing impure intentions comprises no more than a series of conclusory allegations that cannot satisfy Iqbal. Even if the Court inferred "malice" from the discriminatory and retaliatory acts that plaintiff alleges Lake committed during her tenure, such conduct is insufficient to establish "independent tortious act[s]" under New York law to sustain a tortious interference claim brought by an employee against her superior. See Baguer, 2007 U.S. Dist. LEXIS 70793, at *9-*10 (citing cases and explaining that "alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law"). Simply put, Emmons was an at-will employee, and a claim grieving employment termination by that very employee's superiors acting within the scope of their authority simply does not lie as a tort under New York law. The tortious interference claim is, consequently, dismissed with prejudice.

## Conclusion

For the reasons discussed above, defendants' motion to dismiss is granted in part. The following claims survive the motion to dismiss: (1) retaliation claims against RFCUNY under both the ADA and the Rehab Act; (2) discrimination and retaliation claims against CUNY and RFCUNY under Title VII based on discrete acts alleged to have taken place after September 26,

41

2007; (3) retaliation claims under § 1981 against all defendants except CUNY, and Jackson and Guada in their official capacities; (4) retaliation claims under the FMLA against RFCUNY, and Jackson, Guada, Lake, Smith, and Watson in their individual capacities; and (6) NYSHRL and NYCHRL claims against all defendants except CUNY, and Jackson and Guada in their official capacities.

Plaintiff is further granted leave to amend the complaint to specify the prospective injunctive relief that she is seeking, add causes of action pursuant to § 1983, and replead the following causes of action, provided, of course, that she can do so in compliance with her Rule 8 and Rule 11 obligations: (1) hostile work environment claims under Title VII against CUNY and RFCUNY; (2) claims under the EPA; (3) claims under § 1981 based on discrimination due to race, ethnicity, or ancestry against any defendant except CUNY; and (4) claims under § 1985 against any defendant except CUNY.

Plaintiff shall file any amended complaint no later than 30 days from the date this Memorandum and Order is docketed.

All other claims and causes of action are dismissed with prejudice, including all claims against MEC.

SO ORDERED.

Dated: Brooklyn, New York
June 1, 2010

_____
ERIC N. VITALIANO
United States District Judge